UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **BOBBY WILLIAMS** | * | **CIVIL ACTION NO. 13-2328** |
| **VERSUS** | * | **MAG. JUDGE KAREN L. HAYES** |
| **CITY OF MONROE, MONROE TRANSIT, ET AL.** | * | |

### MEMORANDUM RULING

Before the court is a motion for summary judgment [doc. # 25] filed by defendants City of Monroe – Monroe Transit, Jamie Mayo, and Quentin Holmes. With the consent of all parties, the District Court referred the above-captioned case to the undersigned magistrate judge for the conduct of all further proceedings and the entry of judgment, 28 U.S.C. § 636(c). For reasons assigned below, the motion for summary judgment is GRANTED, and plaintiff's claims are DISMISSED, with prejudice.

### Procedural History

On July 24, 2013, Bobby Williams filed the instant pro se complaint against his former employer, the City of Monroe – Monroe Transit ("City" or "City of Monroe"), apparently pursuant to 42 U.S.C. § 1983 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*.[1] His original complaint reads, in its entirety,

---

[1] Williams attached to his complaint a copy of an Equal Employment Opportunity Commission ("EEOC") right to sue notice. (Compl., Exh.). The notice, however, concluded that the EEOC was unable find that the information established the violation of any statute. *Id*. Williams also attached a copy of a form entitled "Category VII" which listed a series of violations with an "X" marked next to the violation for "[a]bsent without proper notification to Supervisor for 3 consecutive days." (Compl. Exh.).
  Williams wrote on the civil cover sheet that his cause of action arose under 42 U.S.C. §

>       Suing for
>       Wrongful Termination
>       Harassment
>       employment Discrimination
>       and retaliation
>       The amount I am suing for $ 5.000.000

(Compl.) (spacing and punctuation in the original).

On May 20, 2014, Williams filed a motion for leave to amend his complaint to join additional defendants, Monroe Mayor Jamie Mayo and the Monroe Chief of Police Quentin Holmes, as a result of a purported October 23, 2012, "attack" on Williams, ordered by Mayo and carried out by Holmes after Williams stated at the "city commission" (presumably city council) meeting that he had filed an EEOC complaint. (M/Amend [doc. # 18]). Williams further alleged that he was "receiving treatment for anxiety and depression and hardship for $5,000,000." *Id*.

The court denied Williams' motion, and, instead, ordered him to file an amended complaint to allege specific facts sufficient to state a claim for relief. (June 17, 2014, Order [doc. # 22]). On June 2, 2014, Williams so complied. (Amend. Compl. [doc. # 20]).[2] *Liberally*

---

1983. [doc. 1-2].

   [2] Williams alleged that he had filed an EEOC complaint against the City in August 2012. (Amend. Compl. [doc. # 20]). On October 23, 2012, Williams and another transit worker went to the city "commission" meeting where Williams spoke and advised all present that he had filed a complaint with the EEOC. *Id*. After he spoke, Mayor Mayo identified Williams as the man who was talking about suing the city. *Id*. Williams then stood up and walked out. *Id*. Mayo, however, signaled two men to follow Williams. *Id*.
   As Williams was walking to his car, he heard someone yell "hey," so he turned around and saw a black man and a white man running toward him. *Id*. The black man was holding a gun, so Williams stopped. *Id*. It was about 7:30 p.m. *Id*. The black man stood in front of Williams, while the white man stood behind Williams. *Id*. The black man identified himself as the chief of police. *Id*. Williams held his arms out and asked Holmes whether he was going to arrest him. *Id*. Williams cautioned Holmes, however, that if he placed his hands on him there was going to be a lawsuit. *Id*. Williams then asked Holmes if he knew Carol Powell (a local attorney). *Id*. At that point, the men departed. *Id*. Williams' co-worker, plus a friend, both witnessed the encounter. *Id*.
   The next day, Williams contacted the EEOC who advised him to amend his complaint to

construing Williams' amended pleading, the court concluded that he had alleged sufficient facts to state a retaliation claim. (June 17, 2014, Order [doc. # 22]).

On September 19, 2014, defendants filed the instant motion for summary judgment seeking dismissal of plaintiff's claims in their entirety. On September 30, 2014, plaintiff filed an unsworn opposition memorandum, styled "Motion to Dismiss Summary Judgement" [sic], in which he essentially incorporated the allegations set forth in his complaint and amended complaint. (Opp. Memo. [doc. # 27]). Defendants did not file a reply memorandum, and the time to do so has lapsed. *See* Notice of Motion Setting [doc. # 26]. Thus, the matter is ripe.

## **Summary Judgment Standard**

Summary judgment is appropriate when the evidence before the court shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law" Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit under applicable law in the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is

---

include a retaliation claim. *Id*. Williams then began a three month campaign of complaining and protesting in front of city hall and the Monroe transit office. *Id*. At the next city "commission" meeting, Williams placed his name in the book so he could complain. *Id*.

On November 6, 2012, Williams purportedly received a five day suspension for insubordination for not signing a paper after he had clocked out for that day. *Id*. One of Williams' supervisors told a coworker that it was good that he was gone. *Id*. On two other occasions, another supervisor told Williams, in front of passengers, to get his God d__ed a__ on the bus. *Id*.

On April 10, 2013, Williams was placed on a three day work suspension, which meant that he was suspended, but needed to check in every morning to see if he was needed. *Id*. Williams contends that it was not clearly explained to him that he needed to check in. *Id*. Although he concedes that he did not check in for the first two days, he alleges that he *did* check in on the last day of his suspension. *Id*. Thus, he maintains that he was wrongfully terminated. *Id*. He concluded his amended complaint by stating that "then the gm mike told a co worker to get in touch with me if I won't my job back and I did not know that until later." *Id*. (grammar and spelling in original).

such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.*

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "The moving party may meet its burden to demonstrate the absence of a genuine issue of material fact by pointing out that the record contains no support for the non-moving party's claim." *Stahl v. Novartis Pharm. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002). Thereafter, if the non-movant is unable to identify anything in the record to support its claim, summary judgment is appropriate. *Id.*

In evaluating the evidence tendered by the parties, the court must accept the evidence of the non-movant as credible and draw all justifiable inferences in its favor. *Anderson*, 477 U.S. at 255. While courts will "resolve factual controversies in favor of the non-moving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). There can be no genuine dispute as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322-323. The non-moving party may not merely rely on the allegations and conclusions contained within the pleadings; rather, the non-movant "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial." *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996). The non-movant does not satisfy his burden merely by demonstrating some metaphysical

doubt as to the material facts, by setting forth conclusory allegations and unsubstantiated assertions, or by presenting but a scintilla of evidence. *Little*, 37 F.3d at 1075 (citations omitted).

Moreover, "summary judgment is appropriate in *any* case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.'" *Little, supra* (citation omitted) (emphasis in original). In sum, "[a]fter the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Mississippi River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000) (citation omitted).

### Relevant Facts[3]

**I.      Failure to Promote**

a)      <u>Plaintiff's EEOC Charge</u>

In EEOC Charge No. 846-2012-77104, signed on "12-8-12," Bobby Williams declared under penalty of perjury that,

> I was hired in February 2009 by the Respondent, Monroe Transit, as a Bus Operator. From July 2012 through the present, I have been subjected to denial of promotional opportunities. The respondent employs more than 15 persons.
>
> No reason was given for such actions; however, only white persons have been promoted (some to positions that were not posted as available, and/or some without education or credentials.)
>
> I believe that I have been discriminated against because of my race, Black, in violation of Title VII of the Civil Rights Act of 1964, as amended.

(Charge of Discrimination; Def. MSJ Exh. 2).

The charge indicated that the discrimination occurred on July 12, 2012, but that it was a

---

[3] The following facts are culled from the evidence submitted by defendants in support of their motion for summary judgment. Unless otherwise noted, the evidence remains uncontroverted.

continuing action. *Id*. On April 19, 2013, the EEOC issued a right to sue notice. *Id*.

b) <u>City of Monroe's Response to Plaintiff's Failure to Promote Charge</u>

The City of Monroe adduced a copy of an unsigned, undated "Position Statement," purporting to be its response to the EEOC regarding Williams' initial charge. *See* Affidavit of Christine Winfield, Def. MSJ, Exh. 5; Position Statement, Def. MSJ, Exh. 5-C). The City of Monroe represented that from July 2012 through the date of the response, it had not advertised or filled any positions at Monroe Transit. (Position Statement, Def. MSJ, Exh. 5-C). Nonetheless, the City acknowledged that in June-July 2012, two vacancies became available for the positions of maintenance supervisor and parts clerk. *Id*. It was not until October 2012, however, that the City requested permission from the mayor to advertise and fill the position of maintenance supervisor. *Id*. As of the date of the response, the mayor had yet to approve the request. *Id*. Once it filled the maintenance supervisor position, the City intended to advertise and fill the position for parts clerk. *Id*. There were no other job postings or promotions in the transit department. *Id*.

**II.     Retaliation**

a)     <u>Plaintiff's EEOC Charge Stemming from His November 17, 2012, Suspension</u>

In EEOC Charge No. 461-2013-00342, signed "2-7-13," Bobby Williams declared under penalty of perjury that

> I was hired in February 2009 by the Respondent, City of Monroe Transit System, as a Bus Driver. As of November 9, 2012, I was subjected to a disciplinary action of a one-day suspension by Supervisor Rex Wallace. I attended a Pre-Disciplinary Hearing on November 13, 2012; I served my suspension on Saturday the 17th. The Respondent employs more than 200 persons.
>
> According to Kevin Schultz, Service Development Manager, I was suspended due to tardiness, refusal to follow a directive given by two Supervisors, and generally poor performance under Category VIII of the Employee Work Rules.

> I believe that I have been discriminated against in retaliation for opposing
> practices made unlawful under Title VII of the Civil Rights Act of 1964, as
> amended.

(Charge of Discrimination, Def. MSJ, Exh. 3).

The charge indicated that the discrimination was based on race and retaliation that occurred on November 9, 2012. *Id*. On March 31, 2014, the EEOC issued a right to sue notice. *Id*.

b)   <u>City of Monroe's Response to Plaintiff's Retaliation Charge</u>

On April 18, 2013, the City of Monroe submitted a position statement to the EEOC in response to Charge No. 461-2013-00342. (April 18, 2013, Position Statement; Def. MSJ, Exh. 5-D). The City noted that Williams had a history of work-related problems, including at least one incident in April 2012 that pre-dated his original EEOC complaint. *Id*. The City further noted that Williams was a bus driver covered by a Collective Bargaining Agreement ("CBA") between the Monroe Transit System City of Monroe and Amalgamated Transit Union Local No. 1160, AFL-CIO. *Id*.; *see also* Affidavit of Tom Janway and attached partial copy of the CBA; Def. MSJ, Exh. 1 & 1A. Also in effect during the relevant period was a document entitled Monroe Transit Employee Work Rules and Code of Discipline ("Work Rules"). *Id*.; Def. MSJ, Exh. 1 & 1B. The City explained that it was required to consistently apply its Work Rules. (April 18, 2013, Position Statement; Def. MSJ, Exh. 5-D).

On November 6, 2012, Williams was scheduled to run a bus route beginning at 6:30 a.m. *Id*. However, he clocked in at 6:37 a.m. *Id*. According to Article XX of the CBA, an employee who arrives five (5) or more minutes late for work will receive a "missout," and will not be permitted to drive his route that day unless no other operator is available. *Id*.

The City issued Williams a letter explaining his "Work Rules" violation and advising him of a pre-disciplinary hearing that was scheduled for November 8, 2012. *Id*.; Nov. 6, 2012, Pre-

7

Disciplinary Hearing Letter, Def. MSJ, Exh. 5-E.  Although Williams received a copy of the letter, he did not comply with his supervisors' instructions to confirm receipt of the letter by signing for it.  *Id*., *see also* Supervisor Reports by Willie Mae Williams and Wilford Short, Def. MSJ, Exh. 5E.  The next day, November 7, 2012, the City notified Williams that his pre-disciplinary meeting would be rescheduled because he had failed to follow his supervisors' instructions to sign for the letter.  (April 18, 2013, Position Statement; Def. MSJ, Exh. 5-D; Nov. 7, 2012, Letter from Monroe Transit to Bobby Williams; Def. MSJ, Exh. 5E).

On November 9, 2012, the City issued Williams a new letter ordering him to attend a pre-disciplinary hearing on November 13, 2012, to address, not only his tardiness on November 6, but also an additional charge of insubordination for refusing his supervisors' orders to sign for the pre-disciplinary hearing letter.  (April 18, 2013, Position Statement; Def. MSJ, Exh. 5-D; Nov. 9, 2012, Letter from Monroe Transit to Bobby Williams; Def. MSJ, Exh. 5E).  The letter further documented three prior disciplinary actions committed by Williams within the preceding three year period, including a suspension on February 9, 2010, for an un-excused absence.  *Id*.

On November 13, 2012, the City accorded Williams his pre-disciplinary hearing.  (April 18, 2013, Position Statement; Def. MSJ, Exh. 5-D; Nov. 15, 2012, Letter from Monroe Transit to Williams; Def. MSJ, Exh. 5E).  At the hearing, however, Williams failed to present any additional information to excuse his failure to report timely for work on November 6, 2012.  *Id*.  Thus, the City awarded Williams a "missout," – his fourth disciplinary violation in a three year period – and suspended him for one day to be served on Saturday, November 17, 2012.  *Id*.[4]  The

---

[4] The City, however, did not sustain the subordination charge against Williams.  *Id*. Rather, it accepted Williams' explanation that he was no longer "on the clock" at the time he was presented with the letter, which excused his failure to sign for it.  *Id*.

decision letter advised Williams of his right to "grieve" the matter through the CBA grievance process. *Id*. Williams, however, did not file a grievance. (April 18, 2013, Position Statement; Def. MSJ, Exh. 5-D).

c)    Williams' April 5, 2013, "Missout"

On April 6, 2013, Monroe Transit issued Williams a letter advising him that a pre-disciplinary hearing would be held on April 9, 2013, because on April 5, 2013, he arrived 37 minutes late to work, thus resulting in his second "missout" within a 180 day period. (April 6, 2013, Letter, Def. MSJ, Exh. 5-F).

The City held Williams' pre-disciplinary hearing on April 9, 2013. (April 9, 2013, Letter, Def. MSJ, Exh. 5-F). Williams did not refute the charge. *Id*. Accordingly, the City assigned him a three day *working penalty* scheduled for April 12, 13, and 16. *Id*. The letter advised Williams to check his schedule on those days for his assignment(s). *Id*.

d)    Williams' Un-excused Absences on April 12-13, 2013 and His Resulting Discharge

On April 15, 2013, the City issued Williams a letter advising him that a pre-disciplinary hearing would be held on April 17, 2013, because Williams failed to appear for work on April 12, 2013, – one of the working suspension days. (April 15, 2013, Letter, Def. MSJ, Exh. 5-F).

The City conducted Williams' pre-disciplinary hearing on April 17, 2013. (April 18, 2013, Letter, Def. MSJ, Exh. 5-F). At the hearing, the City received evidence that Williams failed to report for his assignments on April 12 *and* 13. *Id*. Williams explained, in mitigation, that he thought he was suspended for those days, and that no one had explained to him what a working penalty meant. *Id*. Nonetheless, the City, via Monroe Transit General Manager, Mike Crittenden, determined that Williams had incurred two un-excused absences, which represented a

9

Category VI violation of the Work Rules. *Id.*[5] As a result, Williams' employment was terminated effective April 18, 2013. *Id.* The letter advised Williams of his right to "grieve" the matter through the CBA's grievance process. *Id.*

## Law and Analysis

I. **Title VII and § 1983**

Under Title VII, it is an "unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . ." 42 U.S.C. § 2000e-2(a)(1). In addition, "[a] plaintiff may also assert claims of racial discrimination and retaliation against a government entity under 42 U.S.C. § 1981 and § 1983." *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 490-91 (5th Cir. 2011) (citation omitted). However, "[b]ecause a claim of racial discrimination under Section 1983 is essentially the same as such a claim brought under Title VII," the analysis of plaintiff's discrimination and retaliation claims applies with equal force to both causes of action. *Id.* (citation and internal quotation marks omitted).

II. **Direct vs. Circumstantial Evidence**

A plaintiff "may prove a claim of intentional discrimination or retaliation either by direct or circumstantial evidence." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). "Direct evidence is evidence that, if believed, proves the fact of discriminatory animus without

---

[5] An un-excused absence, defined as "off work without permission," is a Category VI violation. (Monroe Transit Work Rules, Janway Affidavit; Def. MSJ, Exh. 1-B; *see also* Rex Wallace Affidavit, Def. MSJ, Exh. 4). The disciplinary remedy for a second Category VI violation calls for discharge. *Id.*

inference or presumption." *Mooney v. Aramco Services Co.,* 54 F.3d 1207, 1217 (5th Cir.1995).

In his pleadings and deposition, Williams highlighted a couple of comments made by two supervisors that he considered to be offensive. "[S]tatements or documents which show on its face that an improper criterion served as a basis-not necessarily the sole basis, but a basis-for the adverse employment action are direct evidence of discrimination." *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 993 (5th Cir. 2005). However, "for comments in the workplace to serve as evidence of discrimination, they must be: (1) related to the protected class, (2) proximate in time, (3) made by an individual with authority, and (4) related to the employment decision." *Knatt v. Hosp. Serv. Dist. No. 1 of E. Baton Rouge Parish*, 327 F. App'x 472, 485 (5th Cir. 2009) (citing *Jenkins v. Methodist Hosps. of Dallas, Inc.,* 478 F.3d 255, 261 (5th Cir.2007)). Furthermore, comments that are vague and remote in time are insufficient to establish discrimination. *Jones v. Overnite Transp. Co.*, 212 F. App'x 268, 273 (5th Cir. 2006) (citations omitted).

Williams alleges that, at some unspecified time after the city council meeting, a supervisor, Rex Wallace, told him, in front of passengers, to get his "God d__ a__ on the bus." (Williams Depo., pgs. 49-50; Def. MSJ Exh. 8). On another occasion, Williams and another bus driver were discussing a job opening at the zoo, whereupon a member of management, Chris Phelps, passed by and said "yeah, I'm the zookeeper." *Id.*, pgs. 51-53.

The court notes, however, that the comment by Wallace does not implicate race at all.[6] Moreover, for Phelps's comment to be considered racially offensive, it requires the additional inferences that Phelps was referring to himself as the zookeeper *of bus drivers* and that all of the

---

[6] In fact, Wallace himself is black. *See* Transit Employee Listing; Def. MSJ, Exh. 5A.

bus drivers were black. The instant record does not support these additional inferences.[7] Furthermore, there is no evidence that Phelps was involved in any of the adverse employment decisions suffered by plaintiff. Indeed, plaintiff never even filed written complaints concerning these comments. (Williams Depo., pgs. 52-53).

When, as here, the court must draw additional inferences in order for the evidence to be probative of discriminatory animus, then the evidence is considered circumstantial, not direct. *Terry v. Promise Hosp. of Ascension, Inc.*, Civ. Action No. 13-0128, 2014 WL 4161581, at *5 (M.D. La. Aug. 19, 2014) (citation omitted). As Williams has no direct evidence to support his claims, he must rely on circumstantial evidence.

In a case that is prosecuted on the basis of circumstantial evidence, the courts employ the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973). *McCoy*, 492 F.3d at 557. Under this framework, the plaintiff first must establish a prima facie case of discrimination or retaliation. *Id*. If he makes this showing, then the burden of production shifts to the defendant to proffer a legitimate non-discriminatory reason or non-retaliatory reason for its employment action. *Id*. "If the employer meets its burden of production, the plaintiff then bears the ultimate burden of proving that the employer's proffered reason is not true but instead is a pretext for the real discriminatory or retaliatory purpose." *Id*.

Because the requirements for a prima facie case vary by claim, the court will analyze each claim separately.

---

[7] Not all of the bus drivers were black. *See* Transit Employee Listing; Def. MSJ, Exh. 5A.

**III.     Failure to Promote**

To establish a prima facie case for failure to promote, plaintiff must show that "(1) he belongs to a protected class; (2) he applied for and was qualified for a position for which applicants were being sought; (3) he was rejected; and (4) a person outside of his protected class was hired for the position." *Burrell v. Dr. Pepper/Seven Up Bottling Grp., Inc.*, 482 F.3d 408, 412 (5th Cir. 2007) (citation omitted).

Here, Williams has not adduced any evidence to establish any specific position that he applied for, was qualified for, that he was rejected for, and/or which the City instead awarded to someone of a different race. In short, plaintiff has failed to establish a prima facie case for failure to promote, and thus, defendants are entitled to summary judgment as to this claim. *See Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 491 (5th Cir. 2011) (citing *Mason v. United Air Lines, Inc.*, 274 F.3d 314, 316 (5th Cir.2001) ("[S]ummary judgment is appropriate if the nonmovant fails to establish facts supporting an essential element of his *prima facie* claim.").

**IV.     Retaliation**

To establish a prima facie case of retaliation, plaintiff must demonstrate that: "(1) he participated in an activity protected by Title VII; (2) his employer took an adverse employment action against him; and (3) a causal connection exists between the protected activity and the adverse employment action." *McCoy*, 492 F.3d at 556-577 (citations omitted). However, "[c]lose timing between an employee's protected activity and an adverse action against him may provide the causal connection required to make out a *prima facie* case of retaliation." *Id.* (citations and internal quotation marks omitted).

Here, it is manifest that plaintiff's one day suspension in November 2012, which occurred

only a few months after he filed his initial EEOC complaint and less than one month after he mentioned his EEOC filing at a city council meeting, suffices to establish a prima facie case of retaliation. *See LeMaire v. Louisiana Dep't of Transp. & Dev.*, 480 F.3d 383, 390 (5th Cir. 2007) (two day suspension without pay constitutes an adverse employment action). Similarly, his discharge from employment in April 2013 – only two months after he filed his EEOC retaliation charge – also suffices to support a prima facie case of retaliation.

However, in response to Williams' prima facie case, the City adduced uncontroverted evidence that it suspended him for a single day in November 2012 because he reported late to work on November 6, 2012, and had prior rules violations. Williams does not controvert this legitimate, non-retaliatory explanation for his suspension, nor did he appeal the determination through the CBA grievance process. *See LeMaire v. La. Dept. of Trans. and Develop.*, 480 F.3d 383, 391 (5th Cir. 2007) (job performance constitutes a legitimate, non-retaliatory reason for discharge).[8]

Similarly, the City adduced uncontroverted evidence that it assessed Williams with a three day "working penalty" in April 2013 because he reported 37 minutes late for work which constituted his second "missout" within a 180 day period. Although Williams had the benefit of a pre-disciplinary hearing, there is no evidence that he contested the charge then or now. As a result he received a three day "working penalty" scheduled for April 12, 13, and 16, 2013, which, according to the letter signed-for by Williams, advised him that "**[o]n these days, please check**

---

[8] Plaintiff *does* and *did* challenge the additional charge of insubordination for failure to sign the pre-hearing notification letter. He argued that the charge was unwarranted because he was not on the clock at the time. The City, however, dropped that charge, and it did not figure in his one day suspension.

**the schedule for your assignment**." (emphasis in original).

Williams, however, failed to report for work on April 12 and 13 – two of the three "working penalty" days. These additional, un-excused absences compelled the City to discharge Williams because they constituted a Category VI (not VII) violation of the Employee Work Rules. Plaintiff did not then, and does not now contest that he missed those days. Instead, he argued, *inter alia*, that he did not realize that he had to report to work on those days. To survive summary judgment, however, plaintiff must do more than simply dispute the underlying facts and argue that his employer made the wrong decision. *See LeMaire, supra*. Moreover, there is no evidence that plaintiff appealed his discharge through the available CBA grievance process. In addition, plaintiff has not adduced any evidence that, *under similar circumstances*, the City treated non-black or non-complaining bus drivers more favorably than it treated him. *See McCoy, supra*.

V.      **Hostile Work Environment/Harassment**

To establish a hostile work environment claim under Title VII, plaintiff must demonstrate that he

> (1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 52 (5th Cir. 2012) (citations omitted). In assessing whether a work environment is actionably hostile, the court must consider all of the pertinent circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. (citations and quotation

marks omitted). Furthermore, the work environment must be "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Id*.

Here, the evidence before the court supports but three instances of *alleged* harassment: the two comments made by two supervisors and the brief encounter between plaintiff and the chief of police. However, there is no evidence that the confrontation between the chief of police and plaintiff was related to plaintiff's race.[9] In addition, there is no evidence that the encounter affected any term, condition or privilege of plaintiff's employment.

Along these same lines, there is no evidence that the comments made by two different supervisors created a hostile work environment. There is no evidence that Rex Wallace's profanity-laced order commanding Williams to get on his bus implicated race or that it affected a term, condition, or privilege of his employment. Furthermore, there is no evidence that plaintiff alerted the City about this offensive order, or that the City should have known of it. The same rationale applies to Phelps's alleged zookeeper comment.

In sum, plaintiff has not adduced facts to support all of the elements of his hostile work environment/harassment claim as required to withstand summary judgment.

## VI. First Amendment Retaliation

To establish a First Amendment/free speech retaliation claim under § 1983, a public employee must establish that

(1) [ ]he suffered an adverse employment action; (2) h[is] speech involved a

---

[9] For purposes of this motion, the court accepts Williams' account of the encounter, as detailed in his deposition, which is consistent with his recitation set forth in his amended complaint. *See* Williams Depo., pgs. 39-41; fn 2, *supra*.

> matter of public concern; (3) h[is] interest in commenting on matters of public concern outweighed the defendant's interest in promoting workplace efficiency; and (4) h[is] speech was a substantial or motivating factor in the defendant's adverse employment action.

*Burnside v. Kaelin*, 773 F.3d 624, 626 (5th Cir. 2014) (citations omitted).

Speech involves a matter of public concern only when it can be "fairly considered as relating to any matter of political, social, or other concern to the community." *Graziosi v. City of Greenville Miss.*, ___ F.3d ___, 2015 WL 148998, at *5 (5th Cir. Jan. 9, 2015) (citation omitted).

In this case, Williams advised the city council that he had filed an EEOC charge against Monroe Transit for denial of promotional opportunities. By all accounts, however, this speech addressed an employee-employer dispute which militates against a finding that it touched upon a matter of public concern. *Graziosi, supra*. Furthermore, Williams' First Amendment retaliation claim succumbs to summary judgment for the same reasons that his Title VII retaliation claim fell short, i.e. uncontroverted, legitimate, non-retaliatory reasons for the adverse job actions. *See McCoy, supra*.

**VII. Due Process**

To the extent that Williams intended to assert a substantive due process claim under the Fourteenth Amendment as a result of his discharge, he must show that "(1) he had a property interest/right in his employment and (2) his termination was arbitrary or capricious." *Bolton v. City of Dallas, Tex.*, 472 F.3d 261, 263 (5th Cir. 2006) (citations omitted). However, "substantive due process requires only that public officials exercise professional judgment, in a nonarbitrary and noncapricious manner, when depriving an individual of a protected property interest." *Lewis v. Univ. of Texas Med. Branch at Galveston*, 665 F.3d 625, 630-31 (5th Cir. 2011) (citations omitted). Even if "reasonable minds could disagree on the propriety of [the plaintiff]'s

termination" that does not suffice to overcome a public official's qualified immunity defense against a substantive due process claim. *Id.* Rather, the plaintiff must demonstrate that the decision was "made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id*. Stated differently, plaintiff has the burden to show that "the abuse of power by the state official shocks the conscience." *Id*.

Assuming for purposes of this motion that Williams enjoyed a property interest in his employment, no reasonable juror could conclude that the City's decision to terminate his employment was arbitrary or capricious. The evidence remains uncontroverted that Williams was discharged for Work Rules violations, after a hearing. Furthermore, the record is devoid of any evidence that Williams utilized the grievance process to challenge his adverse job actions, which precludes him from protesting that he was denied due process. *Browning v. City of Odessa, Tex.*, 990 F.2d 842, 844 -845 (5th Cir. 1993) (citations omitted)

To the extent that Williams contends that he was denied *procedural* due process, the court notes that he received advance notice of his Work Rules violations and was accorded the opportunity to respond to the charges before discharge. Due process mandates nothing further. *See Williams v. Texas Tech. Univ. Health Sciences Ctr.*, 6 F.3d 290, 293 (5th Cir. 1993).

**VIII. Individual Defendants**

Under Title VII, "relief . . . is available only against an employer, not an individual supervisor or fellow employee." *Knox v. City of Monroe*, 551 F. Supp. 2d 504, 507 (W.D. La. 2008) (citations omitted). Furthermore, the Fifth Circuit has held that a plaintiff cannot sue *both* his employer or a corporation *and* an agent or officer thereof, acting in his official capacity. *Smith v. Amedisys Inc.*, 298 F.3d 434, 449 (5th Cir. 2002); *Indest v. Freeman Decorating, Inc.*,

164 F.3d 258, 262 (5th Cir.1999); *see also Ackel v. National Communications, Inc.*, 339 F.3d 376, 382 n. 1 (5th Cir.2003) (individuals not liable under Title VII in either their individual or official capacities). Accordingly, Williams does not have a viable Title VII claim against the mayor or the chief of police.

In addition, plaintiff cannot sue the individual defendants under § 1983 for retaliation because the Equal Protection Clause does not support retaliation claims. *Aucoin v. Kennedy*, 355 F. Supp. 2d 830, 843 (E.D. La. 2004) (citation omitted); *Gates v. City of Dallas*, No. Civ. Action No. 96-2198, 1998 WL 401602, at *4 (N.D. Tex. July 15, 1998) (citations omitted).

### Conclusion

For the foregoing reasons, the court finds that there is no genuine dispute as to any material fact, and that movants are entitled to judgment as a matter of law. Fed.R.Civ.P. 56. Accordingly,

IT IS ORDERED that the motion for summary judgment [doc. # 25] filed by defendants City of Monroe – Monroe Transit, Jamie Mayo, and Quentin Holmes is hereby GRANTED. Judgment shall issue dismissing with prejudice plaintiff's claims, in their entirety, at plaintiff's cost.

In Chambers, at Monroe, Louisiana, this 29th day of January 2015.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE